# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Robert Baker,[1] | Civil Action No. 2:18-02574-RMG-MGB |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| The Boeing Company, | |
| Defendant. | |

Plaintiff filed this action alleging failure to accommodate under the Americans with Disabilities Act ("ADA") and later amended his complaint to include discriminatory discharge and retaliation under the ADA, and state-law breach of contract claims. (Dkt. No. 1; Dkt. No. 14; Dkt. No. 135.) In response to Plaintiff's Second Amended Complaint, Defendant asserted a breach of contract counterclaim against Plaintiff. (Dkt. No. 154.) This matter is now before the Court upon Defendant's Motion for Summary Judgement on its Counterclaim. (Dkt. No. 209.) Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration. For the reasons set forth below, the undersigned recommends that Defendant's Motion for Summary Judgment on its Counterclaim (Dkt. No. 209) be denied.

---

[1] On May 12, 2021, Plaintiff's counsel entered a Suggestion of Death of Plaintiff Robert B. Baker. (Dkt. No. 283.) In this filing, Plaintiff's counsel explained that they are working with Plaintiff's family members to appoint a personal representative. (*Id*. at 1.) Plaintiff's counsel also claimed that the causes of action asserted in this lawsuit survive Plaintiff's death. (*Id*.) The undersigned issues this Report and Recommendation under the assumption that Plaintiff's claims survive him. The undersigned notes that Plaintiff's counsel has 90 days following the date on which the Suggestion of Death was served to file a motion for substitution. Fed. R. Civ. P. 25(a)(1). If Plaintiff's counsel does not file such motion within the required timeframe, Plaintiff's action will be dismissed. *Id.*

1

## **RELEVANT BACKGROUND**

This action arises from Plaintiff's employment with Defendant from 2012 to 2018. (Dkt. No. 135 at 2−3.)² During that time, Plaintiff performed various engineering-related jobs, including as a composite fabrication quality systems specialist and as a final assembly and delivery employee. (*Id*.) Plaintiff has a disability which posed no issues in his job as a composite fabrication quality systems specialist but precluded him from doing the manual labor required as a final assembly and delivery employee. (*Id*. at 2.) Plaintiff requested a reasonable accommodation on account of his disability. (*Id*. at 2−3.) He contends that Defendant failed to properly accommodate him under the ADA and its own internal policies. (*Id*.) Plaintiff further contends that Defendant discriminated and/or retaliated against him by demoting him and requiring him to take a leave of absence that led to the end of his employment. (*Id*. at 7−10.) Accordingly, he brought the instant civil action against Defendant, alleging three causes of action under the ADA. (Dkt. No. 1; Dkt. No. 14.)

Plaintiff's Second Amended Complaint also states that Plaintiff reported Defendant's failure to fulfill its federally mandated on-the-job training obligations to his supervisors multiple times throughout his employment. (Dkt. No. 135 at 9−10.) More specifically, Plaintiff explains that he observed safety violations while working for Defendant and that he proposed an on-the-job training program to rectify those issues. (Dkt. No. 233 at 2−3.) However, Plaintiff's program was never implemented. (*Id*. at 2.) In June of 2015, Plaintiff filed an ethics complaint criticizing Defendant's failure to implement

---

² This Report and Recommendation reflects the pagination assigned by the Court's automated docketing system.

Plaintiff's program and alleging that he was retaliated against on account of his persistent disapproval of Defendant's on-the-job training policy.[3] (*Id.*)

Plaintiff later filed an AIR21 complaint with the U.S. Department of Labor, but his complaint was dismissed as untimely. (Dkt. No. 209 at 9.) Thus, "without a federal remedy in this Court for Boeing's violation of AIR21," (Dkt. No. 233 at 7), Plaintiff filed a complaint with the Federal Aviation Administration ("FAA") and the Occupational Health and Safety Administration. (Dkt. No. 233 at 7.) Defendant contends that Plaintiff disclosed certain documents containing proprietary information to the FAA in connection with these complaints. (Dkt. No. 209 at 1.) Defendant also contends that Plaintiff improperly retained his company-owned laptop long after his employment with Defendant ended. (*Id.*) Defendant asserts that these actions are in direct violation of the Intellectual Property and Confidentiality Agreement (the "Confidentiality Agreement") that Plaintiff agreed to upon beginning his employment. (*Id.*) Accordingly, Defendant brought a breach of contract counterclaim against Plaintiff as part of its Answer to Plaintiff's Second Amended Complaint on August 4, 2021. (Dkt. No. 154 at 53.)

Defendant now moves for summary judgment on that counterclaim. Defendant filed its Motion for Summary Judgment on November 6, 2020 (Dkt. No. 209) and Plaintiff filed his response in opposition on December 1, 2020 (Dkt. No. 233). Defendant filed a timely reply on December 11, 2020. (Dkt. No. 248.) As such, the motion before the Court is fully briefed and ripe for disposition.

---

[3] The undersigned notes that retaliation on account of Plaintiff's ethics complaint and on-the-job training criticisms is not a cause of action in this civil suit. (Dkt. No. 135.) Rather, Plaintiff brings a cause of action for retaliation on account of his disability in violation of the ADA. (*Id.*)

## **LEGAL STANDARD**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When a party fails to establish the existence of an element essential to that party's case, there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

In ruling on a motion for summary judgment, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). "Although the Court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013) (citing *Anderson*, 477 U.S. at 252; *Stone v. Liberty Mutual Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

**DISCUSSION**

To recover for a breach of contract under South Carolina law, Defendant must show the existence of "the contract, its breach, and the damages caused by such breach." *Fuller v. E. Fire & Cas. Ins. Co.*, 240 S.C. 75, 89, 124 S.E.2d 602, 610 (1962). In this case, Defendant argues that it is entitled to summary judgment on its breach of contract counterclaim because "[t]he undisputed facts here show that Plaintiff entered into a legally binding agreement; he violated the express terms of that agreement when, without authorization or prior approval, he retained [] Boeing Documents and his Boeing laptop following his retirement from Boeing and subsequently disclosed certain Boeing Documents to the FAA; and his actions have harmed Boeing." (Dkt. No. 209 at 10–11.)

## I. Valid Contract

Defendant must first show that it entered into a valid contract with Plaintiff to sustain its breach of contract counterclaim. To create a valid contract, there must be an offer, acceptance, and valuable consideration. *Roberts v. Gaskins*, 327 S.C. 478, 486 S.E.2d 771, 773 (1997) (citing *Carolina Amusement Co., Inc. v. Connecticut Nat'l Life Ins., Co.*, 313 S.C. 215, 437 S.E.2d 122 (1993)). Defendant contends that the aforementioned Confidentiality Agreement "is a valid and enforceable contract, well supported by adequate consideration under South Carolina law." (Dkt. No. 209 at 11.) Defendant further contends that "[t]he existence of a contract that gives rise to Boeing's claim is uncontested." (*Id.*)

However, Plaintiff's response notes that the version of the Confidentiality Agreement submitted by Defendant is not signed in "pen and ink" and takes issue with Defendant's indication that Plaintiff's signature is "on file." (Dkt. No. 233 at 9.) Plaintiff

states that "if Defendant was in possession of an original signed version of [the Confidentiality Agreement], [] counsel would have attached the same to its motion. Since it did not, Plaintiff craves reference to the original agreement, signed [in] pen and ink by Baker." (*Id*.) Plaintiff also notes that there is no "e-signature marking" on the version of the Confidentiality Agreement submitted by Defendant. (*Id*.) He argues that this lack of a "pen and ink" signature or "e-signature" on Defendant's exhibit creates a genuine issue of material fact as to whether Plaintiff reviewed and agreed to the Confidentiality Agreement. (*Id*. at 9–10.)

In reply, Defendant notes that "Plaintiff does not deny that he entered into a contract with Boeing; he simply states that Boeing 'has not attached an original signed version' of the Confidentiality Agreement." (Dkt. No. 248 at 3, citing Dkt. No. 233 at 9.) Defendant is correct. In fact, Plaintiff states in the "Factual and Procedural Background" portion of his response to Defendant's Motion that: "[o]n or around December 26, 2011, Baker and Boeing entered into a mutual agreement whereby Baker agreed to keep confidential and not disclose or use Boeing proprietary information without authorization." (Dkt. No. 233 at 2.) He then cites to the Confidentiality Agreement. (*Id*., citing to Dkt. No. 209-1.) Defendant also contends that "Plaintiff does not present to the Court any evidence that he did not agree to the terms of the Confidentiality Agreement." (Dkt. No. 248 at 3.) Indeed, Plaintiff states only that the Court should agree that he was unaware of the contents of the Confidentiality Agreement because "[he] state[d] that Boeing [] never contacted him regarding the computer or [] other apparel items." (Dkt. No 233 at 10.)

Nonetheless, the undersigned is constrained to view the facts in the light most favorable to Plaintiff. *Hunt*, 526 U.S. at 552 (explaining that the nonmoving party's

evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor). While Plaintiff does not specifically deny that he entered into the Confidentiality Agreement, he implies that he never agreed to it. (*Id*. at 9–10.) The burden is on Defendant to prove that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Between Plaintiff's contention that he did not agree to the Confidentiality Agreement and Defendant's failure to provide an original, signed copy of the agreement, it is not clear as a matter of law that the Confidentiality Agreement is a valid contract. *See Roberts*, 486 S.E.2d at 773 (1997) (noting that acceptance is the second element of a valid contract). Accordingly, there is a question of fact on this issue and summary judgment is therefore inappropriate.

## II.    Remaining Elements

The undersigned has considered the remaining elements of Defendant's breach of contract claim in an abundance of caution. In the event that the District Court disagrees with the undersigned regarding the Defendant's inability to prove as a matter of law that the Confidentiality Agreement is a valid contract, Defendant can establish the remaining elements of its breach of contract counterclaim.

With respect to breach, Defendant argues that Plaintiff "blatantly breached the Confidentiality Agreement" by "retain[ing] Boeing's proprietary information without authorization, maintain[ing] possession of Boeing's laptop . . . , and disclos[ing] several Boeing Documents to the FAA." (Dkt. No. 209 at 13.) Defendant states that such actions were in direct contravention of Plaintiff's agreement to "preserve in confidence and not disclose or use, either during or after the term of [the] Agreement, any Proprietary Information." (*Id*., citing Dkt. No. 209-1 at 2.) Plaintiff does not dispute Defendant's

assertions. Instead, Plaintiff argues that his actions were justified because Defendant failed to reassign him in violation of the ADA. (Dkt. No. 233 at 10–11.) Plaintiff also argues that the Confidentiality Agreement violates public policy and is therefore unenforceable. (*Id*. at 11.) More specifically, Plaintiff argues that the Confidentiality Agreement is illegal because it hinders the ability of Defendant's employees to provide information to government agencies (such as the FAA) that are tasked with ensuring compliance with federal mandates. (*Id*. at 11.)

As an initial matter, this Court has previously considered a nearly identical situation involving the agreement at issue here. *See Woods v. Boeing Co.*, No. 2:11-cv-02855-RMG, 2013 WL 5332620 (D.S.C. Sept. 23, 2013), *aff'd* (Sept. 30, 2014).[4] In doing so, the Court rejected the plaintiff's argument that his ADA lawsuit served "as a kind of equitable defense for any misconduct on his part in keeping confidential and proprietary documents." *Id.* at *10. The Court explained that "[t]he obligation of the defendant to treat the plaintiff non-discriminatorialy and the plaintiff's obligation, in confidence, run parallel to each other and are not dependent—the proverbial impotency of two wrongs to make things right." *Id.*

The Court in *Woods* also rejected the plaintiff's argument that the Confidentiality Agreement was unenforceable for public policy reasons. *Id.* at *2–3. As in this case, the plaintiff in *Woods* proposed "a public policy exception to enforcing a confidentiality agreement where a party discloses violations of law to a federal agency." *Id.* at *2. Although the Court noted that it saw some merit in this public policy exception, it

---

[4] In *Woods v. Boeing Co.*, Boeing brought a breach of contract counterclaim against an employee who misappropriated documents to prosecute his ADA claim. No. 2:11-cv-02855-RMG, 2013 WL 5332620 (D.S.C. Sept. 23, 2013), *aff'd* (Sept. 30, 2014). Boeing argued that the employee violated the same Intellectual Property and Confidentiality Agreement at issue here. *Id.*

8

concluded that plaintiff's appropriation would not fall into such an exception. *Id.* Rather, the Court determined that Plaintiff's retention of twenty-six proprietary documents was too "vast and indiscriminate" to fall into a public policy exception, particularly in light of the fact that only two of those documents were attached to the plaintiff's FAA complaint. *Id.*

Here, Plaintiff impermissibly retained over 450 pages of documents, along with a company laptop. (Dkt. No. 209 at 5.) Even assuming that not all of the information Plaintiff retained was proprietary, retention of 450 pages of documents and a laptop full of information surely qualifies as the kind of "vast and indiscriminate appropriation" previously admonished by this Court. *See Woods*, 2013 WL 5332620, at *2. Further, as in *Woods*, Plaintiff did not disclose all of the information he retained to the FAA, making his public policy argument unpersuasive. (*See* Dkt. No. 209 at 9; Dkt. No. 209-14.) Regardless, Defendant's breach of contract claim arises from Plaintiff's initial appropriation of information and failure to return it, not from his disclosure to the FAA. (Dkt. No. 209 at 2–8; Dkt. No. 248 at 6.) Based on the above, the undersigned must conclude that there is no genuine issue of material fact as to whether Plaintiff inexcusably breached the Confidentiality Agreement. Thus, the undersigned considers whether Defendant has established "damages caused by such breach." *Fuller*, 124 S.E.2d at 610.

On this point, Defendant argues that "Plaintiff's disclosure of documentation to the FAA was a deliberate attempt by Plaintiff to gain the upper hand in litigation he filed against Boeing in another forum" and that "Plaintiff's actions have deprived Boeing of the ability to control the dissemination of its documentation not only to the FAA, but to other highly motivated third parties with whom Plaintiff may elect to share this information." (Dkt. No. 209 at 14.) To remedy its injury, Defendant requests "an order permanently

enjoining Plaintiff from further breaching the Confidentiality Agreement and requiring him to immediately return all Boeing Documents in his possession." (*Id.* at 11.)

In response, Plaintiff contends that Defendant "is unable to identify anything that Baker did with the documents causing damage to Boeing or what dollar amount of damage he allegedly caused." (Dkt. No. 233 at 12.) Plaintiff is correct that Defendant is unable to quantify the monetary damages to which it is entitled. (Dkt. No. 209 at 16.) However, this does not mean that Defendant was unharmed by Plaintiff's breach. As the Court in *Woods* concluded:

> Defendant is entitled to the *control* over its proprietary documents. It is the curator of their authenticity and the decisionmaker as to whether they are implicated in discovery, not the plaintiff. The plaintiff[']s conduct has robbed the defendant of both rights in its documents. That is the damage suffered, in the least, whether or not other economic damage, in the marketplace, is ever established.

*Woods*, 2013 WL 5332620, at *11 (emphasis in original). Based on the facts of the instant case, the undersigned must agree.

### III. Equitable Remedy

Further, the undersigned finds that Defendant's requested remedy of a permanent injunction could be appropriate. When asserting a breach of contract claim, a party can request actual damages and/or injunctive relief. *See PBM Prod., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 127 (4th Cir. 2011) ("[T]he mere fact that a plaintiff may recover damages does not negate his right to injunctive relief."); *see also Milliken & Co. v. Morin*, 386 S.C. 1, 685 S.E.2d 828, 832–33 (Ct. App. 2009). A request for damages is tried to a jury and a request for equitable relief is tried to the Court. *See Time Warner Cable v. Condo Serv.*, 381 S.C. 275, 672 S.E.2d 816, 818–19 (Ct. App. 2009). As noted, Defendant cannot quantify, and therefore does not seek, monetary damages at this juncture. (Dkt. No.

209 at 17.) As such, the Court must determine only whether Defendant is entitled to equitable relief as a matter of law.

A permanent injunction is appropriate when the requesting party can demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Here, Defendant can establish each element.

First, "Defendant's loss of control over its valuable proprietary documents is an irreparable injury." *Woods*, 2013 WL 5332620, at *4 (citing *Indus. Packaging Supplies, Inc. v. Martin*, No. 6:12-cv-713, 2012 WL 1067650, at *5 (D.S.C. Mar. 29, 2012) ("Courts consistently have recognized that . . . the misappropriation of proprietary information constitutes irreparable harm to an employer."). Moreover, Plaintiff and Defendant agree that Defendant cannot quantify its monetary damages, (Dkt. No. 209 at 16; Dkt. No. 233 at 12), and the record supports that conclusion (Dkt. No 209-2 at 4). "Where monetary damages are difficult to ascertain, remedies at law are generally inadequate." *Woods*, 2013 WL 5332620, at *4 (citing *Uhlig, LLC v. Shirley*, No. 6:08-cv-01208, 2012 WL 2458062, at *3 (D.S.C. June 27, 2012)).

Next, Plaintiff sets forth no argument regarding his hardship in the face of a permanent injunction. (*See generally* Dkt. No. 233.) As Defendant notes, "a permanent injunction will only enforce [an] already existing contractual obligation, with no resulting harm to Plaintiff." (Dkt. No. 209 at 17.) Accordingly, "considering the balance of hardships

11

between the plaintiff and defendant, a remedy in equity is warranted." *eBay Inc.,* 547 U.S. at 391. Finally, it is in the public interest to enforce contractual obligations. *See Smith Braedon Co. v. Hadid*, 825 F.2d 787, 790–91 (4th Cir. 1987) ("'[T]he usual and most important function of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape from their obligations under them.'" (quoting *Baltimore & Ohio Southwest Railway Co. v. Voight*, 176 U.S. 498, 505 (1900))). As such, Defendant can establish that a permanent injunction could be warranted in this case.

## CONCLUSION

Based on the foregoing, the undersigned **recommends** that Defendant's Motion for Summary Judgment on its Counterclaim (Dkt. No. 209) be **denied**.

**IT IS SO RECOMMENDED.**

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

May 19, 2021
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).